(June 13, 1912.)

# ED CLAIBORN and NEPHI LARSEN, Respondents, v. UTAH ASSOCIATION OF CREDIT MEN, Appellant.

[124 Pac. 788.]

CORPORATE INDEBTEDNESS—RIGHT OF SETOFF—INDEBTEDNESS OF DIRECTORS AND STOCKHOLDERS.

(Syllabus by the court.)

1.    Where five directors of a corporation passed a resolution declaring a dividend of $24 per share and ordered and directed that

the same be paid to the stockholders, and at the same time declared that a necessity existed for securing a loan of $10,000, and directed that the loan be procured from the five directors present and that such directors should make the loan to the corporation, and the directors thereafter procured the required amount of money from other persons and executed their joint and several promissory notes to the persons from whom they procured their loans and paid the money over to the corporation, and after the maturity of the notes they were paid by two of the joint and several makers thereof, and the corporation became insolvent and went into the hands of a receiver, and the two directors who paid the notes presented the entire account to the receiver and asked that it be allowed in their favor, and at the same time each of the five directors who had procured these loans and who had agreed to each make a loan to the corporation were largely indebted to the corporation, *held*, that the indebtedness of the corporation was to each individual director and stockholder and not to the payees of these promissory notes, and that the receiver was entitled to an offset against such indebtedness in the amount of the indebtedness of the respective directors and that the claim should have been so allowed.

2.   Record examined as to the facts and circumstances out of which the indebtedness claimed in this case, arose, and *held* that both the law and the equities of the case are with the creditors of the insolvent corporation and that the claims of the respective directors should be offset by the amount of their indebtedness to the corporation.

APPEAL from the District Court of the Fourth Judicial District for Twin Falls County.   Hon. Edward A. Walters, Judge.

Proceeding for the allowance of a claim against the receiver of the estate of an insolvent corporation.   From a judgment in favor of the claimant the creditors appeal.   *Reversed.*

James H. Wise, for Appellant.

Subrogation is a creature of equity and will not be permitted where it will work injustice to the rights of those having equal or superior rights.   (*Porter v. Title Guaranty & S. Co.*, 17 Ida. 364, 106 Pac. 299.)

The one seeking subrogation must have a greater equity than those who oppose him.   (*Hotchkiss v. Makeel*, 87 Ill.

App. 623; *Grand Council R. A. v. Cornelius*, 198 Pa. 46, 47 Atl. 1124; *Musgrave v. Dickson*, 172 Pa. 629, 51 Am. St. 765, 33 Atl. 705.)

The equities being equal, the law will prevail. (*Ritter v. Cost*, 99 Ind. 80.)

Bowen, Porter & Stockslager, for Respondents.

McDermid had general authority to borrow money, but even if he had no such authority, the corporation, having accepted the benefits of McDermid's acts, cannot assert a lack of authority on his part. (10 Cyc. 1067, 1068, 1078; *Witter v. Grand Rapids Co.*, 78 Wis. 543, 47 N. W. 729; *Pixley v. W. P. R. R. Co.*, 33 Cal. 183, 91 Am. Dec. 623; *Love v. Export Storage Co.*, 143 Fed. 1, 74 C. C. A. 155; *Fisk Mining Co. v. Reed*, 32 Colo. 506, 77 Pac. 240; *Newport Ice Co. v. Lunyon*, 69 Ark. 287, 62 S. W. 1047; *Domenico v. Packers' Assn.*, 112 Fed. 554; *Phillips v. Sanger Co.*, 130 Cal. 431, 62 Pac. 749; *Topeka v. March*, 10 Kan. App. 40, 61 Pac. 876.)

Or suppose we consider the transaction in the light of each borrowing $2,025 for the corporation, with the other four as sureties, still the surety who paid the obligation would be subrogated to the rights of the principal. (37 Cyc. 363 et seq.; *Yaple v. Stephens*, 36 Kan. 680, 14 Pac. 222; *Redington v. Cornwell*, 90 Cal. 49, 27 Pac. 40; *Shaffer v. McClosky*, 101 Cal. 576, 36 Pac. 196; *Waldrip v. Black*, 74 Cal. 409, 16 Pac. 226.),

AILSHIE, J.—About the 1st of March, 1909, B. Wilkins, A. McDermid, and E. W. Tilley, who had formerly been doing business under the firm name of Kimberley Supply & Produce Co., associated themselves with other parties, among whom were Ed Claiborn and Nephi Larsen, and formed a corporation under the same name as the former copartnership. On about the first day of May, 1909, a special meeting of the board of directors was held in which A. McDermid,

who was one of the directors, was given the power to borrow money to be used in discounting corporation bills and for such other purposes as he might deem profitable or necessary for carrying out the business of the company. On about the 28th day of February, 1910, the directors held a meeting and declared a dividend of $24 per share of capital stock and at the same time passed a resolution authorizing the procuring of a loan from the five directors, A. McDermid, Ed Claiborn, Nephi Larsen, and E. W. Tilley, in the sum of $10,000, and in the resolution it was recited that these directors should make a loan to the company of ''$10,000, more or less, to be used in the business and paying off the wholesale accounts.'' On April 5, 1910, these stockholders and directors named in the resolution of February 28th borrowed money as follows: From H.-P. Larsen, $4,098; from A. B. Norton, $4,000; from Christian Peterson, $1,000; and from Nephi Larsen, $1030. A. McDermid, B. Wilkins, E. W. Tilley, Ed Claiborn and Nephi Larsen were joint and several makers of all these notes except the one to Nephi Larsen, which was signed by all the other four. The corporation, the Kimberley Supply & Produce Co., was not known to the lenders in these transactions and did not join in executing the notes. Negotiations looking to procuring the loans were made by A. McDermid. After receiving the money he placed it in the bank to the credit of the Kimberley Supply & Produce Co., and the money was thereafter used by the corporation in the regular course of business. It was agreed between the makers of the notes that each one should become the creditor of the corporation in the sum of $2,025.60. Accordingly, some time in November, 1910, they filed with the secretary of the corporation a statement signed by McDermid, Claiborn, Tilley, Wilkins and Larsen, in which they certified ''that the proportion of money which each of us furnished to the Kimberley Supply & Produce Co., Ltd., from the proceeds of the Pete Larsen note of $4,098, Nephi Larsen note of $1030, A. B. Norton note of $4,000, and Christian Peter-

son note of $1,000, signed by us jointly and severally, is as follows:

"A. McDermid furnished to said company $2,025.60;
"E. W. Tilley        "        "        "      2,025.60;
"Ed Claiborn      "        "        "      2,025.60;
"B. Wilkins        "        "        "      2,025.60;
"Nephi Larsen    "        "        "      2,025.60."

Some time thereafter—the date does not clearly appear—a receiver was appointed for the corporation, it having become insolvent and being unable to meet its obligations. On June 3, 1911, Ed Claiborn and Nephi Larsen, claiming to be creditors of the corporation, filed their claims with the receiver and the court for the sum of $10,128, covering these several notes above set out. This claim was based upon the ground that Claiborn and Larsen had signed these notes as security and had been obliged to pay them, and that they were in fact the corporation's obligations and that the claimant's should be reimbursed in full. The court after a hearing made an order directing the receiver to pay Claiborn and Larsen the total sum of all the notes except the Nephi Larsen note, amounting in the aggregate to $9,098, and that he pay to Nephi Larsen the note which had been executed by the other four directors in his favor amounting to $1,030.

This appeal has been prosecuted by the Utah Association of Credit Men, representing the creditors of the corporation, and it contends that the corporation never became liable to the payees of these several notes, and that the notes were not the corporation's debt, liability or obligation. The appellant contends that the corporation became indebted to each of its stockholders and directors, McDermid, Tilley, Claiborn, Wilkins and Larsen in the sum of $2,025.60, and that it is liable alone on these obligations, and that any arrangement entered into between these individuals whereby they procured the money which each loaned to the corporation is a matter which wholly concerns them in their individual capacity and does not concern the corporation. The respondent, on the other hand, contends that these directors and stockholders borrowed

the money for the corporation, and that the obligations which they gave, represented by their promissory notes, were in fact corporate liabilities and obligations.

Looking at the record made by the officers of the corporation and at their transactions which preceded the insolvency and failure of the corporation, it would seem that all parties agreed and understood that each one of these five persons should loan the corporation an equal sum. It further appears that when it came to the matter of procuring this money, they did not have it themselves, and that they found it necessary to go into the market and borrow the requisite amount. In order to do this, they all joined in executing these promissory notes. They evidently signed for each other as a personal favor and as security for each other, in order that each might procure the amount which he had agreed to loan to the corporation. If this be true—and it seems quite conclusive from the record—then each one of these directors became a creditor of the corporation in the respective sums loaned to the corporation, namely, $2,025.60; and, on the other hand, each one became a surety for all the others for their respective amounts which they borrowed in order to enable them to make this loan to the corporation. It is clear that the corporation became in no way liable or responsible to the payees of these notes, and, indeed, it does not appear that any of the payees of the notes, except Larsen, had any knowledge of the use or purpose to which they intended to put this money or that it was going to the corporation. The money was clearly loaned upon the signatures of these individuals and on faith in their individual and collective responsibility.

Again, at the very time that they were making these loans to the corporation they declared a dividend of $24 per share on the capital stock, and each one of them received the dividend, either in cash or merchandise, ranging from $120 to $620, when in fact there was apparently no cash or surplus available for paying any dividend whatever.

At the time the business of the corporation went into the hands of a receiver, these respective parties were indebted to the corporation for property, goods and merchandise pur-

chased from the company in the following sums, respectively: A. McDermid, $1,359.05; E. W. Tilley, $1,564.96; B. Wilkins, $1,559.71; Ed Claiborn, $1,230.45; and Nephi Larsen, $252.00. It does not appear from this record just when this indebtedness arose, but it may be that they made these purchases and incurred this indebtedness after making these respective loans to the corporation, and it is reasonable to assume that the corporation allowed them to become indebted for goods and merchandise on account of the corporation being at the same time indebted to them each in the sum of $2,025.60 for the loans each had made to the corporation.

Now, the whole controversy arises in this case over the right of the receiver to. offset the company's indebtedness to each of these stockholders and directors by the amount each one of them was indebted at the time to the corporation. If the contention made by Claiborn and Larsen be upheld, then the only offset that can be urged against this entire claim is the indebtedness of Claiborn in the sum of $1,230.45 and of Larsen in the sum of $252, and the company will not be allowed to offset the indebtedness of McDermid, Tilley and Wilkins, amounting in the aggregate to $4,483.72. Now, if McDermid, Tilley and Wilkins are unable to pay, then the company will lose this sum, although it may have credited them in these amounts respectively upon the theory that the company was indebted to each in an amount exceeding these respective charges. It is also reasonable to assume that they are unable to pay, or else they would have been required by Claiborn and Larsen to each pay their respective shares of these notes when they became due, or that they would have paid their indebtedness to the corporation. Whichever way this matter may be finally determined, it will in all probability work a hardship upon someone. In that case, however, the burden must fall upon the one most culpable and liable, or, in other words, upon the one upon whom the legal liability rests, and those least responsible or who may have relied upon the action of these parties to their injury must be protected. A person about to extend credit to the corporation would, if there was any question about the solvency of the company,

inquire as to the nature of its liabilities and assets. It would naturally have made a great difference to one about to extend credit to this corporation whether the corporation was directly liable in the full sum of $10,128, and at the same time these individuals were respectively owing this corporation in the sums above set out; or, on the other hand, the corporation was indebted to each of these directors and stockholders in the sum of $2,025.60, and at the same time each of these stockholders and directors was in turn indebted to the corporation in the sums above set forth. In other words, it would in fact make a difference of $5,966.17, the total amount of indebtedness of all these directors. This, of course, is upon the theory that these stockholders and directors thus indebted were not responsible or a collection of the sum could not be made from them or in proportion as they were financially responsible.

Another thing which does not look right upon its face is the fact that these people at the same time they were agreeing to each make a loan to the corporation were voting a dividend of $24 per share of the capital stock and paying themselves that sum at a time when the corporation was in need of $10,000 cash to successfully and profitably carry on its business.

We have no doubt under the facts as disclosed by this record that, as a cold legal proposition based upon the transactions which they actually had, the corporation was indebted only to each individual in the sum of $2,025.60, and that it was entitled to offset that indebtedness by the indebtedness of each of those directors as the same existed at the time of the appointment of the receiver. We are also persuaded from the facts disclosed in this record that the equities of the case are likewise with the creditors and against these directors and stockholders. For the foregoing reasons, the order and judgment of the trial court should be reversed, and it is so ordered, and the cause is remanded with direction to allow the claims subject to the respective offsets as above indicated. Costs awarded in favor of appellant.

Stewart, C. J., and Sullivan, J., concur.